## John S. Colwell *vs.* Nelson Armstrong.

In *assumpsit* by A. against B. the defendant pleaded in set off a claim which he supported by the record of a prior judgment recovered against a third party by "A., trustee for B.," the proceeds of which B. had never received from A. A. denied the trust, and in explanation stated that the former action was so brought by arrangement with B. in order to keep from A.'s creditors the moneys recovered. The presiding justice charged the jury that by the record the prior judgment *primâ facie* belonged to B., and that A. was estopped from setting up his fraudulent plan against the creditors and claiming the money.

*Held*, error, as A. did not admit a trust and set up fraud to defeat it, but denied the trust and stated the fraud in explanation of his denial.

Exceptions to the Court of Common Pleas.

*June* 16, 1883. Durfee, C. J. This is *assumpsit*, to which the defendant pleaded several claims in set off, and among them a claim for $247.27, money recovered by the plaintiff in an action on a note, payable to his order, given to him by one James Mahar. In support of this claim the defendant introduced the record of the action on said note, which, both in writ and declaration, purported to be an action by the plaintiff as trustee for the defendant. The attorney who prosecuted the action was called to the stand and testified that he collected the money due on the note and paid it over to the plaintiff. The defendant then testified that in 1865 he indorsed a note for the plaintiff on the plaintiff's promise to pay him for indorsing it; that the plaintiff paid the note in 1870; that in 1876 the plaintiff wished to borrow $100 of him, and then said: "If you will lend me the $100 I will give you the Mahar claim for indorsing that note for me and have my

lawyer collect it without expense to you ;" that the money was collected on the Mahar note and never paid to him ; and that two per cent. is the usual compensation for indorsing.   In reply the plaintiff testified that he never agreed to pay the defendant for indorsing the note in 1865 ; that nothing was said about pay then or since then ; that he did not borrow $100 of the defendant in 1876 ; that he did not agree to give the defendant the Mahar note for his indorsement ; that he arranged with the defendant to sue the Mahar note in the defendant's name to shield it from attachment by a creditor; that he brought suit in his own name as trustee for the defendant accordingly, collected the money, and kept it, the money being his and not the defendant's.    There was other testimony given in behalf of both parties, but we do not think it necessary to recite it.    At the close of the trial the plaintiff asked the court to charge the jury as follows, to wit : " If the jury find and believe from all the testimony in the case that the money collected by the plaintiff of Mahar belonged to the plaintiff and not to the defendant, then they will not allow the same to the defendant in set off or otherwise to the plaintiff's claim." The court refused so to charge without the following qualification, to wit : " By the record in the Mahar case, *prim&acirc; facie* the money belongs to the defendant ; and if you believe that, by an arrangement between the parties, that claim was transferred and suit was brought for the purpose of preventing the plaintiff's creditors from making an attachment and collecting their claims, such conduct would amount to a fraud, and the plaintiff's mouth is stopped from claiming said money, he being the one who sets up the fraud, and the defendant is entitled to the funds and to have the same set off against the plaintiff's claim."    The plaintiff excepted, and now asks for a new trial for error in the instruction.

We think the instruction was erroneous.    The maxim *"Nemo allegans suam turpitudinem audiendus sit,"* though very wide, is not universal in its application, and we think it is not applicable to the case presented by the exceptions.    That case is this : The defendant claims as his own the sum of $247.27 recovered by the plaintiff in the action on the Mahar note, and to establish his claim produces the record in that case, and shows that the plain-

tiff described himself in the record as his trustee. It is not contended that the plaintiff made himself a trustee by so describing himself, but only that his so describing himself is evidence, *primâ facie* evidence, of a trust. The plaintiff in his defence does not admit a trust and set up his own fraud, or his and the defendant's fraud jointly perpetrated, to invalidate or defeat it ; but he says no trust ever existed, and testifies that he described himself as the defendant's trustee, after conferring with the defendant, who consented that he might so describe himself, knowing that there was no trust. This was the entire defence. But the plaintiff doubtless saw that the jury would be sure to ask why he described himself as trustee if there was no trust, and would not give credence to his testimony unless he explained why he did it. And he therefore testified that he did it to blind his creditors and prevent attachment. The fraud, if such it was, was not alleged by the plaintiff as a defence to the claim, but as an explanation of an apparent admission adduced by the defendant to establish the claim. We know of no cases which hold that a defending party cannot, under such circumstances, show the truth. We think he should be permitted to show it, for to hold that he should not, would be to hold that a party who has once told a lie for a bad purpose shall never be permitted to retract it for his own protection, however iniquitous the use which his opponent seeks to make of it.

The court below in its charge to the jury, as reported in the bill of exceptions, used the following language, to wit : " If you believe that, by an arrangement between the parties, that claim was transferred," &c. The words seem to imply that there was evidence from which the jury could find an actual transfer of the note. The bill of exceptions does not state any such evidence. There is nothing to show that the note was either indorsed or delivered to the defendant or actually transferred to him in any other manner. The defendant himself testified only to an agreement on the part of the plaintiff to let him have the note or its proceeds. We have considered the case as if no transfer was ever actually made, understanding the word " transferred " in the charge of the court to have been used, not to signify any actual

transfer by indorsement, delivery, or assignment, but only a simulated transfer by arrangement between the parties.

*Exceptions sustained.*

*Ziba O. Slocum,* for plaintiff.
*Simon S. Lapham,* for defendant.